**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **BLUEBONNET INTERNET MEDIA** | § | |
| **SERVICES, LLC,** | § | |
| *Plaintiff,* | § | **6-20-CV-00731-ADA** |
| | § | |
| *v.* | § | |
| | § | |
| **PANDORA MEDIA, LLC,** | § | |
| *Defendant.* | § | |

<u>**ORDER DENYING DEFENDANT'S MOTION TO TRANSFER**</u>

Came on for consideration this date is Defendant Pandora Media, LLC's Motion to Transfer to the Northern District of California ("NDCA") pursuant to 28 U.S.C. § 1404(a). After careful consideration of the Motion, the Parties' briefs, and the applicable law, the Court **DENIES** Defendant Pandora's Motion to Transfer.

## I. INTRODUCTION

In patent cases, motions to transfer under 28 U.S.C. §1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.,* 551 F.3d 1315, 1319 (Fed. Cir. 2008). A party seeking a transfer to an allegedly more convenient forum carries a significant burden. *Babbage Holdings, LLC v. 505 Games (U.S.), Inc.,* No. 2:13-CV-749, 2014 U.S. Dist. LEXIS 139195, at *12–14 (E.D. Tex. Oct. 1, 2014). Pandora moved to have this case transferred to NDCA. The Court finds that Pandora has not met the "heavy burden" of showing that NDCA is a *clearly more convenient* venue. *See Volkswagen II*, 545 F.3d at 314 n.10, *QR Spex*, 507 F.Supp.2d at 664.

## II. BACKGROUND

Plaintiff Bluebonnet Internet Media Services, LLC filed this lawsuit against Pandora Media, LLC on August 12, 2020, or patent infringement. Pl.'s Compl., ECF No. 1 at 1. On

December 7, 2020, Bluebonnet filed this Motion to Transfer Venue to the Northern District of California ("NDCA") pursuant to 28 U.S.C. § 1404(a). Def.'s Mot., ECF No. 31 at 1.

Plaintiff Bluebonnet is a Texas limited liability company with its principal place of business in Arlington, Texas. Pl.'s Compl. at 1. Bluebonnet, through its predecessor Friskit, was a pioneer of online streaming media services and obtained patents related to these services. Pl.'s Compl. at ¶ 6. Defendant Pandora is a Delaware limited liability company with its principal place of business in Oakland, California. *Id.* at 1; Def.'s Mot., EFC No. 31, 1. Pandora also has a place of business in Austin, Texas. Pl.'s Compl. at 1. Pandora seeks to transfer venue to NDCA arguing that nearly every aspect of this case, especially the relevant documents and the majority of the witnesses, are located in California. Def.'s Mot. at 1. Bluebonnet contends that this District is more convenient because WDTX is closer for many non-party witnesses and that Pandora has failed to meet its burden to show that NDCA is "clearly more convenient." Pl.'s Resp. at 4; *see In re Apple*, 979 F.3d 1332, 1337 (Fed. Cir. 2020).

### III. LEGAL STANDARD

Title 28 U.S.C. §1404(a) provides that, for the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. Under § 1404(a), the central inquiry is whether a civil action 'might have been brought' in the destination venue. *Volkswagen II*, 545 F.3d at 312. In the Fifth Circuit, the "[t]he determination of 'convenience' is determined by public and private interest factors that are not dispositive. *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other

practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing to *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). "Although these factors are "appropriate for most transfer cases, they are not necessarily exhaustive or exclusive." *The State of Texas, et al. v. Google LLC*, No. 4:20-CV-957-SDJ, 2021 WL 2043184 at *3 (E.D. Tex. May 20, 2021).

The burden to show that a case should be transferred for convenience falls on the on the moving party. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). This burden requires the movant to show not that the alternative venue is more convenient, but that it is clearly more convenient. *Volkswagen II*, 545 F.3d at 314, n.10. A plaintiff's choice of venue is not an independent factor in the venue transfer analysis, and courts must not give inordinate weight to a plaintiff's choice of venue. *Id.* at 313. However, "when the transferee venue is not *clearly more convenient* than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315; *see also State of Texas*, 2021 WL 2043184 at *2.

## IV. ANALYSIS

The threshold determination in the §1404 analysis is whether this case could have been brought in the NDCA. Neither party contests the fact that venue is proper in the NDCA and that this case could have been brought there. Def.'s Mot. at 1; Pl.'s Resp. at 2.

**A. The Private Interest Factors Are Neutral.**

***i. The Relative Ease of Access to Sources of Proof***

      The place where the defendant's documents are kept weighs in favor of transfer to that location. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genetech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). The relative ease of access to sources of proof is not determined by the availability of electronic materials in either district but rather, the physical location of the documents themselves. *In re Apple Inc.*, 979 F.3d at 1340. Therefore, when considering the relative ease of access to sources of proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored. *Volkswagen II*, 545 F.3d at 316. The movant must describe with specificity its inability to obtain the evidence in the current forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981); *see also 10Tales, Inc. v. TikTok Inc.,* No. 6:20-cv-00180-ADA, 2021 WL 2053978 at *3 (W.D. Tex. May 21, 2021). However, in cases like the present, the fact that the evidence "might" exist in a particular location without any identification of the specific document, is insufficient. *State of Texas,* 2021 WL 2043184 at *4.

      Pandora relies on the 5th Circuit's decision in *DataQuill, Ltd., v. Apple Inc.,* to assert that this factor weighs in favor of transfer to NDCA. Def.'s Mot. at 10; No. A-13-CA-706-SS, 2014 WL 2722201, at *3 (W.D. Tex. June 13, 2014) (holding that in patent infringement cases, the bulk of relevant evidence usually comes from the accused infringer; and therefore, the location of the defendant's documents tends to be the more convenient venue). Pandora also indicates that the electronic transmission of confidential information, including relevant source code, is limited to the physical location where the confidential information may be viewed. Def.'s Mot. at

11. Pandora asserts that its confidential information may only be viewed in NDCA; therefore, NDCA is a more convenient venue. *Id.*

In response, Bluebonnet asserts that the documents cited by Pandora also reside on servers at least in Virginia. Pl.'s Resp. at 3. Bluebonnet further argues that Pandora has failed to identify with specificity which documents Pandora will be unable to obtain if the case remains in WDTX. Bluebonnet concludes that none of its documents presently exist in NDCA but asserts that potentially relevant documents exist in Pandora's offices in Dallas and Colorado. *Id.* at 4. Pandora clarifies in its Reply that the server in Virginia is only a backup server. Def.'s Reply, ECF No. 57. 1. Pandora explains that the data center that is actually used by its day-to-day operations is also located in NDCA and reiterates that its confidential source code which requires in-person inspection in NDCA. Def.'s Reply at 4. Pandora also refers to the presence of documents in counsels' offices in Dallas and Colorado as a mere "artifact" of prior litigation which is not relevant to analyzing this factor. *Id.* at 1.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d at 1345. Pandora, as the accused infringer, will likely have the bulk of relevant documents which it keeps on servers in NDCA. While Bluebonnet raises that Pandora's documents are actually accessible from anywhere, this Court is bound by 5th Circuit precedent which does not consider accessibility but focuses on actual physical location of servers containing electronic documents.[1] *See Volkeswagen II*, 545 F.3d at 316.

---

[1]In several previous orders, this Court has lamented this factor as out of touch with modern patent litigation. *Fintiv*, 2019 WL 4743678, at *8; *Uniloc 2017 LLC v. Apple Inc.*, 6-19-CV-00532-ADA, 2020 WL 3415880, at *9 (W.D. Tex. June 22, 2020). In those cases, the Court acknowledged that "all (or nearly all) produced documents exist as electronic documents on a party's server. Then, with a click of a mouse or a few keystrokes, the party produces these documents." *Id.* Because the documents are housed on servers, documents may be located on multiple servers in

The fact that Pandora also has relevant information on backup servers in Virginia cannot outweigh the fact that Pandora has servers with the same information within NDCA. Further, the documents in Dallas and Boulder have not been identified by Bluebonnet as having information relevant to this case.  What is most persuasive to the Court is Pandora's identification of the source code which exists in NDCA and requires in-person review. Def.'s Reply at 4. Precedent in the 5th circuit is clear that this factor speaks to the physical location of documents and does not concern the locations from where the documents are accessible. *Koss Corp. v. Plantronics, Inc.*, No. 6:20-cv-00663-ADA, 2021 WL 2075685, at *3 (W.D. Tex. May 20, 2021); *see also 10Tales, Inc.* 2021 WL 2053978, at *3. Pandora has effectively explained that the necessary source code along with all other relevant documents are physically located on a server in NDCA and it requires in-person inspection, which leads the Court to find that the relative ease of access to sources of proof favors transfer. Def.'s Reply at 1.

### ii. The Availability of Compulsory Process to Secure the Attendance of Witnesses

The Court considers the availability of compulsory process to secure the attendance of unwilling witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *Fintiv, Inc. v. Apple, Inc.*, No. 6:18-CV-00372-ADA, 2019 U.S. Dist. LEXIS 171102, at *5 (W.D. Tex. Sept. 10, 2019) (citing *Volkswagen II*, 545 F.3d at 316). This factor weighs heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue. *In re Apple, Inc.*, 581 F.App'x. 886, 889 (Fed. Cir. 2014). The convenience of the witnesses is likely the most important factor in the transfer analysis. *Affinity Labs of Texas, LLC v. Blackberry Ltd.*, No. 6:13-cv362, 2014 WL 10748106, at

---

multiple districts—as is the case here. There is no realistic difference in the relative ease of access to these electronic documents from the transferor district as compared to the transferee district since the documents are easily accessible electronically.

*4 (W.D. Tex. June 11, 2014). For the reasons discussed below, the Court finds that this factor is neutral.

Pandora contends transfer to NDCA is appropriate since Pandora as many as seven of its relevant former employees and three current employees reside in NDCA. Def.'s Mot. at 9. Pandora also asserts that there are a large number of highly relevant third-party witnesses that reside in NDCA and are only subject to the subpoena power of the NDCA court. *Id.* a 11. Additionally, Pandora discusses a prior litigation (the "Friskit litigation") involving Bluebonnet's predecessor Friskit which took place in 2003 in NDCA. *Id.* at 12. Pandora asserts that there are prior art issues implicated by the Friskit litigation and that one of the defendants sued by Friskit in that litigation is located in NDCA. *Id.* Pandora further alleges that this court does not have the power to compel these third-party witnesses to attend trial in this district but the NDCA court does. *Id.* at 12; *see also Collins*, 2002 WL 505931, at *3-4.

Bluebonnet responds by pointing out that Pandora has sixty-three Texas employees, with seven employees located in this District. Def.'s Mot. at 8-9; Pl.'s Resp. at 4. Bluebonnet asserts that the materiality and convenience of these witnesses results in maintaining this case in WDTX. Pl.'s Resp. at 4.

Bluebonnet identifies three Pandora employees who reside in WDTX: two employees who work in Pandora's Dallas and Irving offices; and Pandora's, Mr. Uyeshiro, who resides in Colorado. Pl.'s Resp. at 4. Bluebonnet further contends that the third-party witnesses that Pandora has identified in NDCA are highly unlikely to be called at trial and concludes that their location is not relevant to analyzing this factor. *Id*.

Bluebonnet discusses broadly one theory of damages to aid the Court in understanding the materiality of its cited witnesses. *Id.* at 5. Bluebonnet first identifies Kimberly Joe, Pandora's

Senior Manager of Revenue and Royalties Accounting assigned to the Austin office and Wendi Power, Pandora's Regional Sales Director, who will provide information on subscriber behavior, especially and impact on Pandora's revenue. *Id.* at 6-7. Bluebonnet also identifies Cole Smith, Pandora's Senior Client Services Director who resides in Austin and has unique and relevant information regarding Pandora's advertising services. *Id.* Finally, Bluebonnet identifies Kristopher Hannum, Pandora's Ad Operations Manager who also resides in Austin, as having unique information that differs from Mr. Smith and Ms. Power in scope. *Id.* at 8. Bluebonnet asserts that its identified witnesses are subject to only this Court's subpoena power since they reside within the District or within 100 miles. *Id.* at 5, 8.

Bluebonnet also argues that Pandora's identification of third-party prior art witnesses is irrelevant to analysis of this factor because this Court has held that priort art witnesses are unlikely to testify at trial. *Id.* at 9; *see also SITO*, 2021 U.S. Dist. LEXIS 58394, at *12 (holding that prior art witnesses are generally unlikely to testify at trial, and the weight afforded their presence in this transfer analysis is minimal).

Pandora replies to Bluebonnet by asserting that Bluebonnet has failed to identify any relevant witnesses which this Court would be able to exercise its subpoena power. Def.'s Reply at ¶ 2. Instead, Pandora argues that Bluebonnet has only identified party witnesses and willing third-party witnesses which will be able to testify in either district. *Id.* Pandora also responds to the venue discovery information from Bluebonnet, asserting that the Pandora employees located in NDCA would be individual subject to NDCA's compulsory process if not willing witnesses. *Id.*

The Court notes that neither party though affirmatively asserts that any of its identified witnesses are, in fact, unwilling witnesses. "When no party has alleged or shown any witness's

unwillingness, a court should not attach much weight to the compulsory process factor."
*CloudofChange, LLC v. NCR Corp.*, No. 6-19-cv-00513 (W.D. Tex. Mar. 17, 2020) (citation omitted). Here, both parties identified long lists of party witnesses that are subject to the subpoena power of NDCA and WDTX. However, party witnesses are afforded little weight along long lists and such witness testimony may be duplicative. The Court also finds that the arguments about the Friskit litigation is irrelevant to analyzing this factor. Therefore, this factor is neutral, and the identified witnesses are properly analyzed in the following section.

### iii. The Cost of Attendance for Willing Witnesses

The most important factor in the transfer analysis is the convenience of the witnesses. *SynKloud Techs., LLC v. Dropbox, Inc.*, No. 6:19-CV-00525-ADA, 2020 U.S. Dist. LEXIS 84958, 2020 WL 2494574, at \*4 (W.D. Tex. May 14, 2020); *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). "When the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor or inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 203); *see also State of Texas,* 2021 WL 2043184 at \*5; *see also Seven Networks,* 2018 WL 4026760, at \*8; *Frederick v. Advanced Fin. Sols., Inc.,* 558 F.Supp.2d 699, 704 (E.D. Tex. 2007).

When considering this factor, the Court should consider all potential material and relevant witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 U.S. Dist. LEXIS 152438, 2017 WL 4155236, at \*5 (E.D. Tex. Sept. 19, 2017). However, "the convenience of party witnesses is given little weight." *Moskowitz Family LLC v. Globus Med., Inc.*, No. 6:19-CV-00672-ADA, 2020 U.S. Dist. LEXIS 145438, 2020 WL 4577710, at \*4 (W.D. Tex. Jul. 2, 2020).  For the reasons discussed below, this Court finds that this factor disfavors transfer.

Pandora contends that it is unaware of witnesses of either party who reside in WDTX. Def.'s Mot. at 9. Pandora further asserts that its employees with unique knowledge regarding the accused technology reside in NDCA. *Id.*

Bluebonnet identified the Pandora employees within this District though and provided their relevance to the case. Pl.'s Resp. at 6-8. Bluebonnet also identified material Pandora employees outside the District but within 100 miles though, highlights further witnesses that reside within

First, Bluebonnet identifies George Aposporos, the second named inventor of the Asserted Patent and Bluebonnet's corporate representative. Pl.'s Resp. at 10. Mr. Aposporos lives in Maryland which is 1238 miles from Waco. *Id.* at 11. Next, Bluebonnet identifies the first named inventor of the Asserted Patent Aviv Eyal, a non-party witness, who resides in Israel. *Id.* at 10. Bluebonnet then identifies two other non-party witnesses, Yarden Tadmor and Gila Sand, who were closely involved in the early development of Friskit and certain patented technology from the critical period of conception and reduction to practice. *Id.* These witnesses reside in New York and Philadelphia respectively. *Id.* Bluebonnet further recognizes that Pier Haken and Jeff Morgan have been speculated by Pandora as residing in California, but Bluebonnet has not been given confirmation of these witnesses' certain residence. *Id.* at 11. Regardless of where Mr. Haken and Mr. Morgan reside, Bluebonnet disputes that they have information relating to the relevant time period. *Id.*

Bluebonnet also identifies first name Uyeshiro, a Pandora employee who has already given testimony for this case. *Id.* Mr. Uysehiro resides in Boulder, Colorado and has worked remotely for Pandora since 2010. *Id.* Bluebonnet contends that Mr. Uyeshiro has relevant

knowledge about infringement and damages, especially regarding the technical processes used by Pandora to infringe. *Id.*

Finally, Bluebonnet responds by providing the cost burdens of traveling to NDCA estimated at pre-COVID rates. Pl.'s Resp. at 12. Bluebonnet asserts that come time for trial, travel and boarding expenses will be substantially greater in Oakland, the most inexpensive of the NDCA court location options, than in Waco. *Id.* To which Pandora responds that the estimate provided by Bluebonnet is substantially higher than the actual costs of a hotel in NDCA. *Id.*

Pandora responds by asserting Bluebonnet's selection of Pandora employees only focuses on the employees' place of work and not their degree of relevant information necessary for trial. Def.'s Reply at 2. In response to the three Pandora employees identified by Bluebonnet, Ms. Power, Mr. Hannum, and Mr. Smith, Pandora alleges Bluebonnet has provided no support for why these individuals have knowledge relating to issues about advertising and subscriber services. *Id.* at 3.

Pandora asserts that more appropriate alternatives to the three named Pandora employees exist. First, Pandora identifies Meredith Truettner, Pandora's Controller. Pandora explains that Ms. Truettner is a more relevant witness because she is Ms. Joe's superior and would likely have more relevant information regarding revenue accounting reports than Ms. Joe would. *Id.* at 3.

Pandora then identifies Lizzie Widhelm, Senior VP of Ad Innovation and B2B Marketing, and Kyle Lind, Principal Software Engineer, who may testify regarding the marketing and sales of Pandora's services. *Id.* at 4. Pandora contends these witnesses would be better suited to provide information regarding the design and operation of the specific technology at issue opposed to Christian Long, VP of Sales, and Thomas Joseph, Senior VP of Engineering at SiriusXM. *Id.* Pandora concludes that these witnesses in addition to at least eight other

potential witnesses are all located in California as well as five other individuals with knowledge relating to the topics Bluebonnet has identified as significant in its interrogatories. *Id.*

As a preliminary matter, given typical time limits at trial, the Court does not assume that all of the party and third-party witnesses listed in 1404(a) briefing will testify at trial. *Fintiv*, 2019 WL 4743678, at \*6. Rather, in addition to the party's experts, the Court assumes that no more than a few party witnesses—and even fewer third-party witnesses, if any—will testify live at trial. *Id.* Therefore, long lists of potential party and third-party witnesses do not affect the Court's analysis for this factor. *Id.* Additionally, the Court finds that though the Friskit employees may have relevant testimony regarding the patents at issue, arguments regarding the Friskit litigation are irrelevant to analysis of this factor. The patents at issue in Friskit are not the same patents at issue presently. Pl's Resp. at 9. Friskit involved separate defendants and for Pandora to assert that transfer should be consistent with the decision in Friskit is too tenuous to support transfer to NDCA. Def.'s Mot. at 12.

Travel to either venue will be inconvenient since witnesses are located throughout the country and world. The Court finds that the NDCA is slightly more convenient for the totality of party witnesses. Defendant Pandora asserts that the majority of its potential party witnesses are located in the NDCA and that maintaining this action in this District would impose a great burden on multiple employees to travel to WDTX. However, the Court notes that no more than a few party witnesses are likely to testify—the numerosity of Pandora's potential party witnesses located in the NDCA does not contribute to the analysis of this factor. *STC.UNM,* 2020 WL 4559706, at \*6. Nevertheless, the NDCA is clearly more convenient for Pandora.

The Court acknowledges that NDCA is more convenient for the totality of party witnesses; however, the Court must properly give more weight to the convenience of non-party

witnesses. As such, this factor weighs against transfer. While Pandora's witnesses may be able alleviate some costs by venue transfer, Bluebonnet's identified witnesses present more compelling support in favor of denying transfer to NDCA. The convenience of a party is generally given little weight; therefore, the fact that Pandora listed seven employee witnesses is not persuasive to transfer to NDCA.  Def.'s Reply at 4. Moreover, greater weight is given to a willing non-party witness than to the employees of a party. *Kuster v. Western Digital Techs., Inc.,* 2021 U.S. Dist. LEXIS 25256 (W.D. Tex. February 9, 2021), at *19. Pandora identifies fourteen potential third-party which is far more persuasive to the Court in analyzing this factor. *Id.* However, Pandora has failed to identify the parties, residence, or relevance to this case. Even if transfer is permitted, alleviating this inconvenience for Pandora instills a higher inconvenience for Bluebonnet and their proposed witnesses, especially the identified non-party witnesses. Consistent with prior 5th circuit decisions, the court finds that the inconvenience of the party witnesses if the case was not transferred would be generally the same; whereas the inconvenience to the plaintiff's non-party witness may be greater if the case is to be transferred. Therefore, denying the motion to transfer effectively cancels out the inconveniences to both party witnesses and this factor weighs against transfer. *Texas et al. v. Google LLC*, 2021 U.S. Dist. LEXIS 96586, 2021 WL 2043184 at *4; *Seven Networks*, 2018 U.S. Dist. LEXIS 146375, 2018 WL 4026760, at *12.

### iv. *All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive*

Concluding the analysis of the private interest factors, the Court should consider "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Volkswagen II*, 545 F.3d at 314. This factor carries greater weight in cases for

which "there is co-pending litigation before the trial court involving the same patent and underlying technology" and cases where the trial court is familiar with the underlying patent from prior litigation. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). No such scenario exists in this case; and even if it did, this factor's impact would marginal because considerations of judicial economy and the existence of co-pending litigation should not be dispositive in cases like this one.

Pandora contends the procedural timing of this case has made it ripe for transfer. Def.'s Mot. at 12. Additionally, Pandora asserts that the NDCA has significant experience assessing the technology of the Asserted Patents and cites to the Friskit Litigation to provide support for transfer. *Id.* at 13; *see also Affinity*, 2014 WL 12570501 at *8 (granting transfer due to another court's familiarity with the technology). However, it is important to note that the Friskit litigation concerned parent patents and not those at issue in this case.

The Friskit litigation is again irrelevant to the analysis of this factor. Friskit dealt with different patents and different parties. Friskit involved the parent patenets to this litigation but not those at issue. The Friskit employees willing to testify may be helpful but are not necessarily material since there is no indication they have information about the patents in this case. Additionally, the fact that the Illinois court chose to transfer a completely unrelated case to NDCA is unpersuasive to the Court. Def.'s Mot. at 12-13; Pl.'s Resp. at 12-13. Accordingly, the Court finds this factor neutral at most.

**B. The Public Interest Factors Are Neutral.**

***i. Administrative Difficulties Flowing from Court Congestion***

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums.*" Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73, 84 S. Ct.

185, 11 L. Ed. 2d 137 (1963); *Parkervision, Inc. v. Intel Corp.*, No. 6:20-CV-00108, 2021 U.S. Dist. LEXIS 24588, 2021 WL 401989, at *6 (W.D. Tex. Jan. 26, 2021). This factor considers the "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d at 1347 (Fed. Cir. 2009). Additionally, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.* The Court finds this factor to be neutral.

Pandora asserts that there are no significant administrative difficulties resulting from granting transfer to NDCA. Def.'s Mot. 14. Pandora cites the median time to trial in WDTX as 2.89 years and the median time to trial in NDCA as 2.76 years. *Id.* Bluebonnet responds by pointing out NDCA has just begun having civil jury trials and hypothesizes that due to the backlog caused by COVID, the time to trial in NDCA will be much greater. Pl.'s Resp. 14. In reply, Pandora cites this Court's acknowledgement that the Federal Circuit's warning that this is factor is the most speculative. D Reply, 6; *see also Koss Corp.*, 2021 WL 2075685, at *8.

In response to Pandora's statement regarding the median time to trial, the Court finds little support for transfer. More recent data shows that "for patent cases since 2016, the average time to trial in NDCA was 34.1 months." *Demaray LLC v Samsung Electronics Co., et al.*, No. 6-20-cv-636-ADA, Dkt. #115 at 11 (W.D. Tex. Jul. 1, 2021). By contrast, this Court's Order Governing Proceedings – Patent Case ("OGP") sets patent cases for trial at 52 weeks after *Markman* hearings. Despite the large number of cases pending before this Court, the Court has been able to bring patent cases to trial approximately in accordance with its guidance in the OGP. *See, e.g., CloudofChange, LLC v. NCR Corporation*, No. 6-19-cv-00513 (W.D. Tex., filed Aug. 30, 2019) (20.3 months from case filing to trial); *VLSI Technology LLC v. Intel*

15

*Corporation*, No. 6-21-cv-00057 (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. et al v. Amazon.Com Inc. et al*, No. 6-21-cv-00511 (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc*. No. 6-19-cv-00044 (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial). Therefore, the time to trial for patent cases in the Waco Division is almost 12 months shorter on average than in the NDCA.

Further, the trial backlog in NDCA caused by courthouse closures due to the COVID-19 pandemic beginning in March 2020 would make the time to trial for patent cases, and all cases in general, even longer. In contrast, this this Court conducted its first patent jury trial during the COVID-19 pandemic in October 2020, and has since conducted at least seven jury trials, six of which are patent jury trials. In the first half of 2021 alone, this Court has already conducted five patent jury trials in the Waco courthouse.

Additionally, if conditions improve or at least remain the same, this Court is one of the few in the country to have successfully held a patent trial with witnesses and attorneys traveling from other states, including California. *MV3 Partners LLC v. Roku, Inc.*, No. 6:18-CV-00308-ADA (W.D. Tex. Filed Oct. 16, 2018). Therefore, this factor is neutral.

### ii. Local Interest in Having Localized Interests Decided at Home

This factor considers whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Additionally, this factor most notably regards not merely the parties significant connections to each forum writ large, but rather the significant connections between a particular venue and the events that gave rise to a suit.' *In re Apple Inc.*, 979 F.3d at 1345. "The trier of fact should be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." *Affinity Labs*, 2014 WL 10748106 at *3, 6.

16

The Court finds that this factor slightly favors transfer.

Pandora asserts that this factor weighs in favor of transfer, the Court agrees. NDCA is home to Pandora's relevant third parties' headquarters and its business activity does not pervade WDTX. Def.'s Mot. at 14. Bluebonnet merely asserts that Pandora is not a California company despite presenting itself as such since it has significant senior managers and management spread throughout the country. Pl. Resp. 14. Bluebonnet further alleges that Pandora has significant physical presence in the WDTX evidenced by their lease of office space, entering insurance policies, and opening a facility in Austin and Dallas. *Id.* Pandora contends though that their general presence should not be given much consideration since they employ only 18 employees in WDTX.

The presence of some office space does not constitute as a "significant" physical presence. *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020). Moreover, Pandora's prevalent presence in California is evidence by their headquarters and significant presence throughout the state.  *See In re Apple Inc.*, 979 F.3d at 1345. There is no further evidence provided that indicates a significant connection to WDTX. *See also In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).  The Court finds this factor in slight favor of granting transfer.

### iii. Familiarity of the Forum With the Law That will Govern the Case

The Parties agree this factor is neutral. Pl.'s Resp. at 15; Def.'s Mot. at 14-15.

### iv. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

The Parties agree this is inapplicable. Pl.'s Resp. at 15; Def.'s Mot. at 14-15.

## V. CONCLUSION

The public factors weigh in favor of transfer with the Court finding one public factor favors transfer and the remaining three factors neutral. Importantly, the private factors weigh in

favor of transfer. The two most important factors—the availability of compulsory process and convenience of willing witnesses—are neutral. The only factor weighing in favor of transfer is the ease of access of sources of proof. Since the practical-problems factor were neutral, this Court determines that the factors, taken together, weigh against transfer. Consequently, Pandora has failed to meet its heavy burden of showing that NDCA is a *clearly more convenient* venue warranting transfer.

It is therefore **ORDERED** that Pandora's Motion to Transfer Venue to the Northern District of California is **DENIED**.

SIGNED this 22nd day of July, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE